Townsend, District Judge.
This is a bill in equity for the alleged infringement of letters patent No. 301,884, dated July 15, 1884, for overshoe fastenings, with prayer for an injunction and an accounting. The first claim of said patent is the only one involved in this suit, and is as follows:
“(1) In combination, the catch plate, the tongue pivoted directly to the tongue plate, and the tongue plate extending rearward of the pivot, and in contact with the catch plate when the parts are engaged, all substantially as described. ”
The defenses are anticipation, lack of patentable invention, and non-infringement. The question of validity has been twice argued in this court, and decided in favor of the patent in Buckle Co. v. Hathaway, 48 Fed. Rep. 305, 834. In the opinions of the court therein said first claim of the patent in suit was fully explained and construed. Upon the question of validity, I shall therefore confine myself to a consideration of the new matter presented by defendants.
The defendants have introduced as additional evidence of anticipation a number of patents and exhibits which were not before the court upon the former hearings. Several of the patents are for articles such as corkscrews and button hooks, so pivoted to a handle as to be carried in the pocket. They do not suggest the invention embodied in the first *588 claim of the patent in suit, as heretofore construed by this court. But defendants claim that anticipation is shown by other patents alleged to be analogous to that of the complainant. They rely especially upon the Hartzhorn patent, No. 6,736, granted in 1849, and the Budd patent, No. 120,328, granted in 1871. The Hartzhorn patent is for an improvement in buckles used for suspenders, and which, it is stated, may be used for other purposes. The mode of attachment of the tongue directly to the tongue plate is practically the same as that of the Hammond and King patent, No. 191,758, which was passed upon by this court in the Hathaway cases, and found not to anticipate the patent in suit. Furthermore, the Hartzhorn patent shows the tongue pivoted above the main plate, which is not bifurcated. The spring plate does not extend beyond the pivot bearings. This construction is very different from that of the patent in suit. The two exhibits, “Hartzhorn’s Modified Clasp,” differ materially from the invention claimed in the patent itself. If Hartzhorn had invented in 1849 such a buckle as is shown in “Modified Clasp No. 2,” there would have been little occasion for the numerous inventions and patents in this department during the past 40 years. The Budd patent is for a check-rein fastener. It is not designed for any use analogous to that of the patent in suit. Its only engagement is when it is open. There is no occasion for the rearward extensions of complainant’s patent, and I do not find any such extension claimed in Budd’s patent, or shown in the drawings. But, even if such extensions as are contained in the models shown by defendant correctly represent the patent, it does not seem to me that they furnish any proof of anticipation. The tongue of complainant’s patent could not be .used in combination with the plates in the Budd clasp because of the spring in the lower plate. There is no bifurcation in the lower plate of the Budd patent, and if one is made, as in the “Budd Modified Clasp,” it so weakens the support of the tongue pivot in its socket as to render the device impracticable when applied to buckles. Again, neither of the modified exhibits shown operates to so lock the parts together when closed as to prevent the tilting down of the take-up plate. I am unable to find the invention of the complainant in any of the other patents introduced by the defendants.
The contention of the defendants that the rearward extensions of the tongue plate in the patent in suit do not involve patentable invention was disposed of in Buckle Co. v. Hathaway, supra, in favor of the patent. For the reasons already stated, I do not find anything in the additional evidence introduced which would lead to a different conclusion.
The additional evidence as to the state of the art, especially the pivoted pocket tool patents, confirm the view taken by the court in the Hathaway Case, that the mere elongation of the tongue plate would not have been patentable, but that the mode in which the extension was accomplished in the patent in suit, and the catch plate supported thereby, was patentable.
The defenses of anticipation and lack of patentable invention are not sustained.
*589 The defense of non-infringement presents a much more difficult question. The defendants’ buckle is made under letters patent No. 418,924, issued to John Nase in 1890. Its construction was fully explained by the court in its opinion denying complainant’s motion for a preliminary injunction. 49 Fed. Rep. 274. As stated by Judge Shipman, in that opinion, in defendants’ buckle the catch plate is in part supported by the upwardly projecting ends of the lower plate. It will be seen, by a comparison of the two patents, that the construction of defendants’ clasp differs substantially from that of the plaintiff. In the operation of defendants’ buckle, the catch plate is in part supported by the upwardly projecting ends of the lower plate. The bifurcated rearward extensions serve to protect the upward extensions against strain when the buckle is in use. One of complainant’s experts admits that the arms of the lower plate do not so project rearwardly as to form a bearing for the catch plate. I am not prepared to say that the patent of defendants does not possess the element of novelty in the changed angle of the lower extension to support the pintle. It may be an improvement upon the invention embraced in complainant’s patent. But such invention cannot be used, as in this case, in connection with the rearward extensions, so as to appropriate the invention of complainant. The rearward extensions of the upper plate of defendants’ buckle do seem to me to infringe upon complainant’s patent. It may be true that they serve to “ prevent the upturned lips from being bent out of shape or broken when the buckle is in use; ” but they also, as in complainant’s patent, prevent the cloth of the overshoe from getting caught in the bight of the tongue, in the act of closing the tongue into engagement with the take-up plate. It also appears that, when the tongue and the catch plate are first engaged, the catch plate rests upon the rearward extensions of the tongue plate in exactly the same way as in the patent in suit; and if the engagement be made with each slot successively, and upon feet of different sizes, adapted to the successive slots, it will be found that the catch plate is generally, while in use, supported by the rearward extensions, and only incidentally or momentarily, if at all, upon the upturned lips. I do not think that the fact that the upward extensions may thus incidentally support the catch plate prevents infringement. The rearward extensions of the upper plate, not the upward extensions of the lower plate, form the bearing surface for the catch plate when .the parts are first engaged. It will be seen by an examination of the specification and drawing, Fig. 2 of the patent in suit, that the term “ engaged ” applies to the parts at the first moment of engagement as well as when closed.
In the opinion of the court denying the motion for a preliminary injunction, the court suggested that, although the rearward extensions of the lower plate of the patented buckle might nominally exist in defendants’ buckle, it was not clear that they extended rearwardly of the pivot, as contemplated in the patent. The view which I have taken renders it unnecessary to decide the question of infringement upon this ground. I am satisfied that in practical use the bifurcated rearward *590 extensions of defendants’ buckle perform the same functions as those already construed and adjudicated in favor of the complainant’s patent.
Let there be a decree for an injunction and an accounting.